STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Good   }
Samaritan Haven, Inc.   }
         }  Docket No. 158-10-01 Vtec
         }
         }

DECISION and ORDER

Appellant Good Samaritan Haven, Inc. appealed from a decision of the Development Review Board (DRB) of the City of Barre, denying conditional use approval for transitional family housing in an existing building, 107-109 North Seminary Street, now in residential use as a two-apartment building.

Appellant is represented by Andrea L. Gallitano, Esq.; Interested parties Alfred Flory, Keith Clark, and Colleen Donahue Gilligan, appeared and represented themselves; the City of Barre is represented by Oliver L. Twombly, Esq. Mr. Flory and Mr. Clark own residential rental property adjacent to the project and their property shares a driveway with the project property. Ms. Gilligan owns a residence and four-chair hair salon across the street from the project property. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit by agreement of the parties with only Mr. Flory present. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant is a non-profit corporation organized to provide temporary shelter to homeless individuals and families. It received a conditional use permit and site plan approval in 1986 to operate a homeless shelter on North Seminary Street, near its intersection with Maple Avenue (Route 14) in what was at that time a planned residential district. Appellant has operated the shelter in that location since that time.

Appellant proposes to purchase property at 107-109 North Seminary Street, adjacent to (and across a small stream from) its present shelter. The project property is currently in use as a two-family residence. The first floor is one apartment; the second floor is another apartment. The third floor contains a third apartment not now leased out separately; the third floor bathroom and bedrooms have been used by residents of the second floor apartment. The property is now located in the Commercial zoning district, in which a single-family or two-family residence is a non-conforming use. Setbacks are measured to the building; it would be impractical and the regulations do not require setbacks to be measured from the drip line. The existing building has a front setback (measured to the existing covered porch) of 13' 4", a side setback next to the stream ranging from 6'9" to 8', a rear setback of 37', and a side setback on the side facing the shared driveway of 11½ ' to the property line at the center of the shared driveway. An existing entryway on that side extends into that setback, reducing the setback to 7'7". The proposed handicapped

ramp will also extend into that setback, but by less than the existing entryway. It will be 3'6" wide and on the westerly side of the property requires approval under § 5.1.04(c)(2) as it will not otherwise allow for the required side yard setback of 9 feet. The handicapped ramp is hereby approved under § 5.1.04(c)(2) to address considerations of safety and health, as the ramp itself does not increase the floor area or the use of the building. Accordingly, the setbacks conform to § 5.20.03 of the Zoning Regulations, except for the stream side setback which is nonconforming by approximately one foot but which adjoins a stream rather than a neighboring property and which is allowed to remain as it is unchanged from the existing nonconformity.

The tenants of the project property have maintained as few as two to as many as five vehicles on the project property. A five-vehicle parking configuration is very tight on the project property. Only cars from proposed spaces 1 and 4 can turn around easily on the property. It may be possible for a car in space 2 or 5 to turn around if the turnaround space at the end of the driveway is kept clear of snow. It will be possible to arrange for snow to be removed from the project property or to be plowed straight back onto an adjoining property; no formal legal arrangement for this snow area is in effect as of the present time. It is possible for Appellant to arrange for off-site parking spaces to be allocated to its use, either from the City or from private businesses in the area; no formal legal arrangement for this is in effect as of the present time with regard to the parking to be generated by the project property.

Mr. Flory and Mr. Clark's rental three-apartment property is located on the other side of the project property and shares a driveway with it. The Flory/Clark property has three parking spaces and more room to maneuver on site than does the project property. The amicable shared use of the driveway by the tenants of both properties becomes more difficult when more than three vehicles are parked on the project property. As we noted on the record at trial, any private property disputes regarding the overburdening of the shared driveway easement are not within the jurisdiction of this court and may have to be filed in Superior Court.

Appellant proposes to add a handicapped ramp to the exterior of the building, and to create five 9' x 19' parking spaces in the rear of the building, of which two would be located behind the other three. One of the spaces is proposed to qualify as handicapped accessible. The Zoning Regulations do not require handicapped-accessible parking to qualify under federal statutes or regulations. The handicapped space adjoins a flat paved area whose width in combination with the width of the space may meet federal requirements for handicapped accessible parking.

Appellant proposes to convert the interior of the building to contain three self-contained apartments, plus a common laundry area, a common conference room, and a supervisory office and restroom on the first floor. The common laundry area, common conference room, supervisory office and restroom constitute the only space open to the public in the building, and measure less than one-thousand square feet in area. Appellant proposes that the office be capable of being used for temporary housing for a homeless person using a wheelchair, in lieu of housing at the adjacent homeless shelter which cannot accommodate a person in a wheelchair. Appellant proposes to upgrade the electrical and mechanical systems of the building, and to add sprinkler[1] systems and handicapped access, and to use it as transitional family housing for homeless families. Appellant proposes to screen out and not allow residents with drug or alcohol problems, and to assist the residents to find employment and permanent housing. Appellant proposes to

have as many as five[2] families resident in the three apartments, including potentially a homeless resident using a wheelchair who would be a relatively short term resident. As found in the summary judgment proceedings in Docket No. 77-6-01 Vtec regarding this proposal, families may live at the proposed shelter for a maximum of eight months.

Approximately one-third of the families who have used the adjacent homeless shelter in the past two years have had a vehicle. None of those families has had more than one vehicle and most of the children of those families have been under driving age.

Under the City of Barre Zoning Regulations, a conditional use must not adversely affect the capacity of existing or planned community facilities, the character of the area affected, traffic on roads and highways in the vicinity, and ordinances or bylaws.

The capacity of existing or planned community facilities is not affected by the proposed project.

The character of the area is mixed multi-family residential and small businesses, including home businesses and home offices, with larger and more industrial businesses on the end of the street near its intersection with Main Street. The lots have little yard space and setbacks are small. Parking along the street is congested in the area, due to the day care business at the former Brook Street School and due to the businesses in the area near Maple Avenue. Ms. Gilligan's beauty salon caters to an older clientele who experience problems finding parking on the street or walking from parking spaces to the salon. Accordingly, to maintain the character of the area it will be necessary to impose a condition limiting the daytime on-street parking generated by the proposed project.

Ms. Gilligan has also experienced some adverse effects of noise, bad language and public urination from those who use the existing homeless shelter and who must vacate it during daytime hours and use neighborhood facilities during that time. These effects may be troublesome to the neighborhood, but they are effects of the existing shelter, and must be addressed through enforcement of city ordinances if necessary at the existing shelter. The proposed project will house families who will have access to their apartments during the daytime hours. The project can be expected to function as a three-unit apartment building with an office. The use of the building as a three-family residence, even with the office function, will not adversely affect the character of the area, as long as the parking constraints of the property are addressed.

Traffic on North Seminary Street is heavy at the morning and evening rush hours, as it is used as a bypass from Maple Street (Route 14) to Main Street. During times that traffic is heavy, it is difficult to back out of a driveway onto North Seminary Street safely. A preferred parking configuration is one that maximizes the possibility of turning around on the property to be able to head out when exiting the property. Based on the evidence presented at trial, to allow room for on-site maneuvering no more than three regular and one handicapped parking spaces can be approved on the lot, with the one closest to the house being kept clear for use as a handicapped space. With such a parking configuration the project will not adversely affect traffic on roads and highways in the vicinity.

The project will not adversely affect ordinance or bylaw provisions. The driveway remains at its existing width. The setbacks are met by the project. The Zoning Regulations do not require a loading space as the area open to the public is less than 1000 square feet. Although 5 parking spaces would be required for a three-apartment building, or up to ten spaces for tourist accommodations, the residents are less likely to have cars than the usual three-family apartment building, and the office use will be intermittent to approximately forty hours a week. Four spaces are therefore sufficient under § § 5.7.01(b), (b)(10) and (c). The spaces marked as numbers 1, 4, 2 and 3 in the five-space parking configuration submitted at trial are hereby approved. Spaces 1 and 4 are reasonable in size and in the best interest of public safety and welfare it is better to have two tandem spaces in that location rather than one longer space. Spaces numbered 2 and 3 shall be enlarged to the conforming size of 9' x 22' and shall be moved back (towards the stream) sufficiently far to maximize the ability of all vehicles to maneuver on-site. Within fifteen days of this order Appellant shall provide to the Court and the parties a revised drawing of Exhibit 5, sheet B, for incorporation into this order. We specifically note that this requirement is to have a visual representation of the condition imposed by the Court and not to require subsequent approval of such a configuration. With this configuration, the lot will provide for the maneuvering and access room required by § 5.20.04, but will provide for the required snow accumulation only if an agreement is in play with the adjoining property to the rear, or if snow is removed as necessary to provide for those functions. Accordingly, the proposal will not adversely affect any ordinances or bylaws.

The following reasonable conditions and safeguards must be attached as necessary to implement the purposes of the state zoning enabling act and the Zoning Regulations:

Four parking spaces are approved on site in the configuration discussed above.

At least two off-site parking spaces within walking distance of the project shall be obtained and maintained by Appellant under a written agreement before more than two apartments may be occupied. No more than three vehicles plus a handicapped vehicle may be parked on the site at any time. No more than three residents' vehicles may be parked on the site from 6 p.m. to 7 a.m. on weekdays; no more than two residents' vehicles may be parked on the site from 7a.m to 6 p.m. on weekdays. Any additional residents' vehicles shall be parked in the off-site parking locations and not on the street between Maple Avenue and the former Brook Street School.

Appellant shall obtain a written agreement to push excess snow onto the rear adjacent property as proposed at trial. Snow shall be removed from the property as necessary to keep the parking spaces and maneuvering room clear and useable for their intended purpose.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant' s application for conditional use approval is GRANTED, with the conditions as stated above. This order concludes this appeal.

Dated at Barre, Vermont, this 12th day of December, 2001.

_____

Merideth Wright
Environmental Judge

## Footnotes

1.    An exterior fire escape stairway at one time was proposed to be built on to the rear of the building; it has been deleted from the plans as it is not required with the sprinkler system and fire-rated interior stairway.

2.    This decision does not address the validity of the Zoning Regulations' definition of family; but to the extent that shared housing of related family members was suggested as a possibility at the hearing, we note that such a configuration would fall within the Zoning Regulations' definition of 'family,' so that it would still be a three-family use of the building, plus the emergency use of the office as a handicapped-accessible shelter.